UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REBEKAH BOUT,

    Plaintiff,

v.                                                Case No. 1:09-cv-45
                                                Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on April 10, 1973 (AR 170).[1] She completed the 12th grade and completed special job training as a registered medical assistant (AR 168). Plaintiff alleged a disability onset date of November 10, 2004 (AR 164). Plaintiff had previous employment as a convenience store clerk, home day care provider, medical assistant, phlebotomist, and registered medical assistant (AR 164-65). Plaintiff identified her disabling condition as: chronic headaches; constant pain in the neck and back; and numbness, pain, swelling and discoloration in the legs (AR 163, 403).).

---

[1] Citations to the administrative record will be referenced as (AR "page #").

After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* on May 24, 2007 (AR 33-43). In this decision, the ALJ found that plaintiff was entitled to a closed period of disability from November 10, 2004 through December 7, 2005 (AR 19, 33-43). Plaintiff filed a request for review with the Appeals Council, which vacated the ALJ's decision and remanded the case for further proceedings and issuance of a new decision (AR 19, 47-48). The ALJ held a supplemental hearing on February 12, 2008 (AR 19, 415-40). On remand, the ALJ entered a decision on April 7, 2008, denying plaintiff's claim (AR 19-27). This decision, which was later approved by the Appeals Council on July 10, 2008, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not

2

undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).

3

However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff *had* engaged in substantial gainful activity since the alleged disability onset date of November 10, 2004 (AR 21). Plaintiff's earnings in 2005 were not consistent with substantial gainful activity (AR 21-22). However, she did engage in substantial gainful activity in 2006, when she earned $20,973.03 working for Beacon Services, Inc. and West Michigan Family Medicine PC (AR 21-22). Plaintiff continued to work for West Michigan Family Medicine PC through July 2007, with earnings consistent with substantial gainful activity (AR 22). She also received unemployment compensation for the third and fourth quarters of 2007 (AR 22).

Second, the ALJ found that plaintiff suffered from severe impairments of "degenerative disc disease of the cervical spine, s/p fusion; and mild degenerative disc disease of the lumbar spine with left L5 radiculopathy" (AR 22). At the third step, the ALJ found that she did not

4

have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 24). The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> to perform light work as defined in 20 CFR 404.1567(b). She could lift and/or carry up to 20 pounds occasionally; and in an 8-hour workday with normal breaks, she could stand and/or walk for 8 hours and could sit for 8 hours. The claimant could bilaterally handle, finger, and feel on a frequent basis; could reach and push/pull occasionally; and could use her feet frequently for operating foot controls. The claimant could frequently climb stairs and ramps; could occasionally balance, stoop, kneel and crouch; would be restricted from crawling and climbing ladders or scaffolds; would be restricted from working in environments where she would be exposed to extreme cold and heat and to vibrations; and should not be exposed to more than moderate noise.

(AR 24-25). The ALJ found that plaintiff's RFC did not preclude her past relevant work as a medical assistant (AR 26).

Although the ALJ decided this matter at step four, he performed an analysis through step five. Based upon plaintiff's RFC, the ALJ determined that she could perform other work in the regional economy, which included sedentary work as a production inspector (1,200 jobs), bench assembler (8,000 jobs), and information clerk (1,500 jobs) (AR 27). Accordingly, the ALJ determined that plaintiff had not been under a disability since November 10, 2004 and entered a decision denying benefits (AR 27).

### III. ANALYSIS

Plaintiff, proceeding *pro se*, did not file the required brief in this matter, which caused the court to issue an order to show cause why this matter should not be dismissed for failure to file a brief in accordance with the court's order. *See* docket nos. 9, 10. After finding that plaintiff demonstrated cause, the court entered amended briefing schedule. *See* docket no. 12. In her submission to the court, plaintiff contends that she is disabled by the following conditions: severe

5

chronic back pain; severe chronic neck pain; severe migraine and tension headaches; a venous insufficiency which limits her from prolonged sitting or standing in one position; and major depression. *See* docket no. 13. Plaintiff also submitted additional medical evidence in support of her claims. *Id.*[2]

### A. Disabling back pain and neck pain

On remand, R. Scott Lazzara, M.D., performed a physical examination of plaintiff and prepared a "medical source statement of ability to do work-related activities" (AR 362-73). At her January 9, 2008 examination, plaintiff advised the doctor that she had not worked since September 2007, when she worked at the Western Michigan Family Medicine as a medical assistant (AR 362). She stopped working because of headaches and neck pain (AR 362). Plaintiff reported that she was able to do her activities of daily living (driving, caring for her three children and watching television) (AR 362). She could sit and stand for 15 minutes before she got pain in her legs, could walk about 100 yards, but could not lift more than 25 pounds (per a doctor's restriction) (AR 362).

Upon examination, the doctor found no evidence of joint laxity, crepitance or effusion (AR 363). Plaintiff had full grip strength and her dexterity was unimpaired (AR 363). While she had no trouble walking, plaintiff had mild difficulty with certain orthopedic maneuvers (tandem walk, heel and toe walking, and squatting) (AR 363). Her difficulties in performing these maneuvers were due to pain (AR 363). Plaintiff had normal range of motion studies (AR 363-65). The doctor concluded that plaintiff suffered from "chronic neck pain," as he explained below:

---

[2] Plaintiff submitted some of this evidence to the Appeals Council (AR 3, 10-13, 374-75).

> Much of her pain now appears to be myofascial in origin. She did have a cervical spine straightening and spasms today. Per review of the chart, she has had reverso cervical lordosis which was found clinically today. I do not find any evidence of myleopathy or neuropathy in the upper extremities. At this point, she continues to complain of headaches which would coincide with myofacscial pain. She is on anti spasmodics and pain management. At this point, her current prognosis is guarded long term but stable. Remediability may be beneficial with aggressive massage therapy, continued anti spasmodics, heat and supportive care. She does not appear to be deteriorating.

(AR 366).

Based upon his examination, Dr. Lazzara found that plaintiff had the following work-related restrictions. She could occasionally lift and carry up to 20 pounds but never over that amount (AR 367). She could either sit, stand or walk for a total of 8 hours in an 8-hour workday (AR 368). Plaintiff did not require the use of a cane (AR 368). She can perform reaching with her hands occasionally; perform handling, fingering and feeling frequently; and perform pushing and pulling occasionally (AR 369). Plaintiff can operate foot controls frequently (AR 369). She can never crawl or climb ladders or scaffolds; she can occasionally balance, stoop, kneel, or crouch; and she can frequently climb stairs and ramps (AR 370). In addition, plaintiff has environmental limitations as follows: she should never work in extreme cold, extreme heat or with vibrations; and she should only occasionally work at unprotected heights, with moving mechanical parts, operate a motor vehicle, work in humidity and wetness, and work with dust, odors, fumes and other pulmonary irritants (AR 371).

The ALJ essentially adopted Dr. Lazzara's findings as his RFC determination (AR 24-25). Based on this RFC, the ALJ found that plaintiff could perform her past relevant work as a medical assistant:

> The vocational expert categorized the claimant's past relevant work as a medical assistant as skilled and requiring light exertion; a phlebotomist as

7

semiskilled and requiring light exertion; a daycare provider as semiskilled and requiring medium exertion; and a cashier/checker as unskilled and requiring medium exertion.

In comparing the claimant's residual functional capacity with the physical and mental demands of the job as a medical assistant, the undersigned finds that the claimant is able to perform the job as actually performed, as well as other representative jobs listed by the vocational expert.

(AR 27).

The record supports the ALJ's findings. The VE, Richard Riedl, testified at both of plaintiff's administrative hearings. At the first hearing, the VE testified that the position of medical assistant was at the light exertional category with lifting of supplies of up to 50 pounds one to two times per week (AR 411). At the second hearing, the VE agreed with the ALJ's summary of his previous testimony that a medical assistant "was light to medium, usually light" and skilled (AR 433). At the second hearing, plaintiff testified that at her last medical assistant job, was basically a "sit-stand job," involved telephone triage and did not involve lifting more than 10 pounds (AR 421-22).

When asked if a hypothetical individual with limitations as determined by Dr. Lazzara could perform work as plaintiff did in the past, the VE testified in the affirmative:

> This does suggest that she could do sedentary employment with or without a sit-stand option. It does suggest she could sit up to eight hours at a time, stand up to six hours at a time, certainly, over the course of the day. And lift occasionally up to ten pounds. Her last job would certainly be allowable.

(AR 436-37).

The ALJ could rely on the VE's testimony to support his Step four determination that plaintiff could perform her past relevant work as a medical assistant. *See* 20 C.F.R. § 404.1560(b)(2) (a VE "may offer relevant evidence within his or her expertise or knowledge

8

concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy"). Accordingly, the ALJ's determination that plaintiff could perform her past relevant work as a medical assistant is supported by substantial evidence.

### B. Disabling headaches

The ALJ determined that plaintiff's headaches did not constitute a severe impairment:

> Although the claimant has alleged pain radiating into her head and causing headaches, the record does not support a finding of a severe impairment. Although Dr. Dykes has noted tension headaches, there is no record of treatment other than the emergency room record from Spectrum Health on July 19, 2007, with complaints of tension-type headaches and neck pain exacerbated by a recent 10-hour drive. The claimant was given an injection of Toradol, Companzine and Benadryl and was prescribed Flexeril. The record does not establish headaches of a frequency or severity to result in significant work-related limitations.

(AR 24) (internal citation omitted).

In March 2005, plaintiff reported to an examining DDS physician, Paul Ratcliff, D.O., that she suffered from headaches since 1990, when she was involved in an auto accident (AR 295-97). She reported having about one headache every two weeks, described as sharp pains in the temporal area which last for about two days (AR 295). Plaintiff denied having seizure activity and has not had a CT scan performed (AR 295). Dr. Ratcliff noted that no diagnostic studies have been completed with respect to plaintiff's 15-year history of headaches (AR 297). On examination, the doctor found no focal neurologic deficits (AR 297).

While plaintiff reports that she has suffered from this condition since 1990, the record reflects that she worked with this condition for approximately 12 years (i.e., 1992-2004) (AR 164-65). Substantial evidence supports an ALJ's decision denying benefits for a condition when a claimant leads a normal life and works with a medical condition for a number of years. *See, e.g.*,

*Crisp v. Secretary of Health and Human Services*, 790 F.2d 450, 451-53 (6th Cir. 1986) (claimant found not disabled by a nervous condition, where record establishes that he worked with the condition for 15 years). Plaintiff has failed to meet her burden of proving the existence and severity of disabling limitations caused by the headaches, s*ee Jones*, 336 F.3d at 474, and the ALJ properly rejected this claim for lack of evidence.

### C. Venous insufficiency

The ALJ rejected plaintiff's claim of venous insufficiency as unsupported by the medical record:

> Although the claimant has alleged leg swelling and venous insufficiency, the only mention is a reference to a past history of surgery on her veins as reported to Dr. Ratcliff. The record does not show any diagnosis of venous insufficiency or any related treatment; therefore, there is no medically documented evidence of venous dysfunction.

(AR 24). In his report from March 2005, Dr. Ratcliff noted as follows:

> The patient also reports a history of swelling and pain in her lower extremities which creates difficulty with walking. She states that she was diagnosed with varicose veins and subsequently had surgery to remove the varicose veins approximately 10 years ago.

(AR 295). While Dr. Ratcliff found that plaintiff had evidence of varicose veins and decreased pulses in the lower extremities, he further found that plaintiff's "motor strength, reflexes, and sensation remained intact" (AR 297). There is no medical evidence in the record to support plaintiff's claim that she suffers from a disabling limitations caused by venous insufficiency. The ALJ properly rejected this claim for lack of evidence.

### D. Major depression

The ALJ found that "[a]lthough the claimant reported being depressed, the record does not show any medically documented evidence of depression or any required treatment" other

than a November 2004 note from Dr. Dyke referencing "situational depression" (AR 24, 278). The ALJ also noted the absence of a referral for mental health treatment (AR 24). Plaintiff does not identify any medical evidence in the record to support the claim that she suffers from disabling depression. Plaintiff has failed to meet her burden of proving the existence and severity of disabling limitations caused by depression. *See Jones*, 336 F.3d at 474. Accordingly, the ALJ also properly rejected this claim for lack of evidence.

E. **New evidence**

Finally, plaintiff's brief includes evidence that was not presented to the ALJ consisting of: a May 28, 2004 note from Dr. Kidwai with lifting and exertional restrictions; a physician's note dated October 10, 2006 stating that plaintiff had permanent job restrictions "in the form of clerical/phone room type job"; an employment termination verification dated July 23, 2007; a doctor's note that plaintiff may be off of work from July 19, 2007 through July 21, 2007; and a letter sent to the Appeals Council dated June 20, 2008. *See* docket no. 13-2.[3]

When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988) (per curiam).[4] Sentence six provides that"[t]he court . . . may at any time order the additional evidence to be taken before the Secretary, but only upon a showing that there

---

[3] The court notes that the Appeals Council incorrectly identified Dr. Dyke's June 20, 2008 letter as dated June 30, 2008 (AR 3, 10-13, 374-75).

[4] Section 405(g) authorizes two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (sentence-six remand). *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994).

is new evidence which is <u>material</u> and that there is <u>good cause</u> for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (emphasis added). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. Good cause is shown for a sentence-six remand only "if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability." *Koulizos v. Secretary of Health and Human Servs.*, 1986 WL 17488 at *2 (6th Cir. Aug. 19, 1986).

Plaintiff has not provided good cause for failing to provide the ALJ with the restrictions issued on May 28, 2004 and October 10, 2006. Both of these were in existence prior to the first and second administrative hearings. Similarly, both the employment termination note and doctor's note from July 2007 were in existence prior to the second administrative hearing. Plaintiff has not provided any explanation for failing to present these to the ALJ before the conclusion of the second administrative hearing.

The only new evidence is the June 10, 2008 letter from Dr. Dyke, which states as follows:

> On behest of my patient, Ms. Rebekah Bout, I am writing this letter as an addendum to her disability application that's pending your review.

> Rebekah suffers of severe venous insufficiency and edema compounding her compromised mobility secondary to her chronic lower back pain attributed to multilevel discogenic disease and degenerative osteoarthritis. Moreover, these disabilities have resulted in major depression requiring counseling and medications.

(AR 374); docket no. 13-2. As an initial matter, Dr. Dyke's letter appears unsupported by plaintiff's medical records. These records, which were updated on remand (AR 345-73), do not reflect conditions such as severe venous insufficiency, edema or major depression. Furthermore, the good cause requirement is not met by the solicitation of a medical opinion to contest the ALJ's decision. *See Koulizos*, 1986 WL 17488 at *2; *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (observing that the grant of automatic permission to supplement the administrative record with new evidence after the ALJ issues a decision in the case would seriously undermine the regularity of the administrative process). Accordingly, there is no basis for a sentence-six remand in this matter.[5]

## IV. Recommendation

For these reasons, I respectfully recommend that the Commissioner's decision be affirmed.

Dated: January 19, 2010            /s/ Hugh W. Brenneman, Jr.
                                             HUGH W. BRENNEMAN, JR.
                                             United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[5] In reaching this determination, the court is aware of the ALJ's special duty to develop the administrative record and ensure a fair hearing for claimants, such as plaintiff, that are unrepresented by counsel. *See Lashley v. Secretary of Health and Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983) (ALJ must scrupulously and conscientiously explore all the relevant facts when adjudicating claims brought by unrepresented claimant). It appears that the ALJ discharged this special duty. On remand, the ALJ expanded the record to include updated medical records and the January 9, 2008 consultative examination (AR 345-75).